IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOHNNIE SUTHERLAND, on his own behalf
and others similarly situated,

    Plaintiff,

v.                                                            Case No: 8:06-cv-954-T-17TGW
                                                          DISPOSITIVE MOTION

RDK TRUCK SALES & SERVICE, INC.,
a Florida Corporation,

    Defendant.
_____/

## DEFENDANT RDK TRUCK SALES & SERVICE, INC.'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

Defendant RDK Truck Sales and Service, Inc. ("RDK"), pursuant to Rule 56 of the Federal Rules of Civil Procedure, hereby submits this Motion for Summary Judgment and Incorporated Memorandum of Law. For the reasons discussed below, RDK respectfully moves the Court to enter an Order granting its Motion for Summary Judgment and dismissing Plaintiffs' Amended Complaint in its entirety.

### I.    INTRODUCTION

In the sole count of their Amended Complaint, Plaintiffs, former employees of RDK, seek to recover unpaid overtime compensation, at the premium "half-time" rate, pursuant to the Fair Labor Standards Act (the "FLSA").[1] Thus, the instant motion for summary judgment turns on a single legal question – whether the overtime exemption found in Section

---

[1] Significantly, Plaintiffs acknowledge that they were paid "straight time" for all hours worked at RDK. (See Amended Complaint, ¶ 10).

213(b)(10) of the FLSA is applicable and exempts Plaintiffs from the FLSA's overtime requirements.

The Section 213(b)(10)(A) exemption provides that a non-manufacturing establishment engaging in the business of selling trucks – like RDK – and employing mechanics – like Plaintiffs – is not required to compensate those employees at time and one-half pay for overtime hours worked. Because the undisputed factual record demonstrates that (1) RDK is a non-manufacturing establishment; and (2) Plaintiffs Johnnie Sutherland and Roytaner Williams were employed by RDK as mechanics, the Section 213(b)(10)(A) exemption applies and Plaintiffs' FLSA claim fails as a matter of law. Accordingly, this Court should grant summary judgment in favor of RDK and dismiss with prejudice Plaintiffs' Amended Complaint in its entirety.

## II. FACTUAL BACKGROUND

### A. RDK's Business

RDK primarily engages in the retail sale of refuse and garbage trucks. (Deposition of Johnnie Sutherland (hereinafter "Sutherland Dep.") at 93, deposition excerpts attached hereto as Exhibit A; Deposition of Roytaner Williams (hereinafter "Williams Dep.") at 32, deposition excerpts attached hereto as Exhibit B; Deposition of Russell Oney (hereinafter "Oney Dep.") at 6-7, deposition excerpts attached hereto as Exhibit C; Declaration of Richard Kemner (hereinafter "Kemner Decl.") at ¶ 4, attached hereto as Exhibit D). RDK operates two facilities, both of which are located in Tampa, Florida. (Oney Dep. at 7, 31; Kemner Decl. at ¶ 5).

RDK's truck dealership, where Plaintiffs both worked, is located on Adamo Drive (the "Adamo Drive Dealership"). (Kemner Decl. at ¶ 5; Sutherland Dep. at 23). The Adamo Drive Dealership consists of two buildings (the front office and the service shop) and a parking lot for RDK's vehicle inventory. (Kemner Decl. at ¶ 6; Oney Dep. at 7). The front office building consists of offices for all of RDK's administrative functions, including sales, accounting and information technology. (Kemner Decl. at ¶ 6). The service shop houses RDK's parts department and service bays. (Id.).

RDK is licensed under the laws of the State of Florida to operate as an independent motor vehicle dealership. (Kemner Decl. at ¶ 4). RDK operates like a car dealership – the primary difference being that, rather than selling automobiles, it retails refuse and garbage trucks to end users.[2] (Id. at ¶ 9). Like a car dealership, RDK has an on-site inventory of trucks, which customers can inspect and select for purchase. (Id.). In addition, like a car dealership, RDK operates a tag and title office, which allows RDK to assist in-state customers in obtaining a vehicle title. (Id.).

RDK does not, nor has it ever, manufactured any products. (Kemner Decl. at ¶ 8). Rather, RDK retails a variety of refuse and garbage trucks to customers in the waste management industry. (Id.). The annual income generated from RDK's truck sales comprises approximately 75 percent of the annual income of RDK. (Id. at ¶ 10).

**B.**     **Plaintiffs' Employment with RDK**

Plaintiff Johnnie Sutherland ("Sutherland") was employed by RDK from

---

[2] Prior to RDK occupying the Adamo Drive property, a Ford dealership was located there. (Kemner Decl. at ¶ 6).

approximately April 2003 until he voluntarily resigned in October 2005. (Sutherland Dep. at 14, 20; Deposition of Shelly Lasanta (hereinafter "Lasanta Dep.") at 7-8, deposition excerpts attached hereto as Exhibit E). Plaintiff Roytaner Williams ("Williams") was employed by RDK for approximately one and one half months during 2004. (Williams Dep. at 6). For the duration of their employment with RDK, Sutherland and Williams worked as "hoist installers" assigned to work in the hoist installer area of RDK's shop.[3] (Sutherland Dep. at 26; Williams Dep. at 12, 21-22, 32; Oney Dep. at 10).

As hoist installers, Plaintiffs were primarily responsible for installing hoists and "add-on" equipment, such as tarps, extra axles, fenders, and specialty packages, to RDK's trucks, pursuant to RDK or RDK customer specifications.[4] (Sutherland Dep. at 51, 67; Williams Dep. at 32, 34, 37, 52, 54; Oney Dep. at 11, 21-22; Oney Decl. at ¶¶ 3, 10). Plaintiffs utilized specialized tools, such as wrenches, pliers, and drills, to install hoists and customized equipment on RDK's trucks. (Sutherland Dep. at 90-92; Williams Dep. at 28; Oney Dep. at 11; Oney Decl. at ¶¶ 7-8, 10). Plaintiffs were not responsible for performing non-mechanical

---

[3] There is a dispute as to Williams' job title and the work he performed during his brief employment with RDK. (See Oney Dep. at 27). For purposes of the instant Motion only, RDK will accept as true that Williams was hired as, and performed the duties of, a hoist installer. (Williams Dep. at 12-13).

[4] A hoist is a standard component of a roll-off truck, which is a type of truck used by garbage and refuse haulers. (Declaration of Russell D. Oney (hereinafter "Oney Decl.") at ¶¶ 4-5, attached hereto as Exhibit F). The hoist acts like an arm to elevate the truck's "roll-off container", or temporary dumpster, to a specific location, such as a construction job site. (Id.). Hoists operate by hydraulics and typically are 22 to 24 feet long. (Id. at ¶ 5). Hoist installers mount hoists to RDK's trucks. (Id.).

4

work on RDK's trucks, such as washing, cleaning, painting, or tire changing. (Sutherland Dep. at 29, 95; Williams Dep. at 56; Oney Decl. at ¶ 11).

Sutherland spent 100 percent, and Williams spent 75 percent, of their respective workdays performing hoist and other installation work on RDK's trucks. (Sutherland Dep. at 90, 94, 150; Williams Dep. at 55, 61-62).

RDK tracked hours worked by requiring Plaintiffs to clock in and out using time cards and a time clock. (Sutherland Dep. at 36; Williams Dep. at 15-16; Lasanta Dep. at 17-18). RDK compensated Plaintiffs on a weekly basis at their respective hourly rate for all hours worked in a given workweek. (Sutherland Dep. at 38-39, 44-45, 106-107; Williams Dep. at 14, 66, 70; Lasanta Dep. at 8, 10; Kemner Decl. at ¶ 11). In addition, Plaintiffs were eligible to receive a $50.00 dollar bonus for all hoists installed and a $100.00 bonus for working on Saturdays. (Sutherland Dep. at 35; Williams Dep. at 64-66; Lasanta Dep. at 13-14). Plaintiffs do not dispute that RDK paid them for each and ever hour they worked, including overtime hours, while employed by RDK. (Sutherland Dep. at 106-107; Williams Dep. at 66, 70; Amended Complaint at ¶10).

### III. ARGUMENT AND CITATION TO AUTHORITY

**A.** **<u>Summary Judgment Standard</u>**

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is appropriate if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). RDK "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of

5

material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In discharging its burden on summary judgment, RDK must point out to the Court that there is an absence of evidence to support the Plaintiffs' case. Id. at 325. To defeat RDK's summary judgment motion, Plaintiffs must offer affirmative evidence to support their claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). Neither "a mere scintilla of evidence" nor evidence that is "merely colorable" or "not significantly probative" is sufficient to defeat RDK's summary judgment motion. Id. at 249, 252.

**B.** **Plaintiffs' FLSA Claim Fails as a Matter of Law**

Plaintiffs' sole contention in the present action is that the FLSA and, more specifically, 29 U.S.C. § 207(a)(1), entitled them to receive overtime compensation for work performed over forty hours a week. See Amended Complaint at ¶10. Section 207(a)(1) states, in relevant part:

> Except as otherwise provided in this section, no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). In addition to establishing overtime compensation requirements, the FLSA also creates exemptions from these requirements. One such exemption, the mechanics' exemption found in Section 213(b)(10)(A), states that "[t]he provisions of section 207 . . . shall not apply to . . . any salesman, partsman, or mechanic primarily engaged in selling or servicing automobiles, trucks or farm implements, if he is employed by a non-manufacturing establishment primarily engaged in the business of selling such vehicles or implements to ultimate purchasers." 29 U.S.C. § 213(b)(10)(A); see also Viart v. Bull

Motors, Inc., 149 F. Supp. 2d 1346, 1348 (S.D. Fla. 2001) (discussing the FLSA's mechanics' exemption).[5] If the requirements of Section 213(b)(10)(A) are met, then employees falling within the scope of the exemption have no statutory entitlement to time and one-half pay for hours worked in excess of forty in a week. See 29 U.S.C. § 213(b)(10)(A) (excluding covered employees from Section 207 maximum hours requirements).

Here, Plaintiffs cannot prevail on their overtime claim as a matter of law because RDK can establish both requirements of Section 213(b)(10)(A). Accordingly, the Court should grant summary judgment in favor of RDK and dismiss with prejudice Plaintiffs' Amended Complaint in its entirety.

1. **Plaintiffs are exempt from the FLSA's overtime requirements pursuant to the mechanics' exemption in Section 213(b)(10)(A).**

The mechanics' exemption applies if the Court determines that RDK (1) is a non-manufacturing establishment engaged in the sale of trucks; and (2) employed Plaintiffs as mechanics.[6] See 29 U.S.C. § 213(b)(10)(A). As demonstrated below, because RDK can establish both of these requirements, Plaintiffs are exempt from overtime coverage and their FLSA claim fails as a matter of law.

---

[5] Pursuant to the Court's Order of Procedure dated May 30, 2006, copies of all cases and authority cited in this Motion are being submitted to the Court simultaneously herewith.

[6] Whether Plaintiffs fall within the scope of the mechanics' exemption is "ultimately a legal question." Viart, 149 F. Supp. 2d at 1349 (citing Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 713-14 (1986)).

### a. RDK is a non-manufacturing establishment primarily engaged in the business of selling trucks to ultimate purchasers.

This Court must first decide whether RDK is a "non-manufacturing establishment primarily engaged in the business of selling trucks to ultimate purchasers." 29 U.S.C. § 213(b)(10)(A). RDK readily satisfies this requirement. First, there is no dispute that RDK is a non-manufacturing establishment. RDK does not, nor has it ever, manufactured any trucks or any other products. (Kemner Decl. at ¶ 8). Rather, RDK primarily engages in the retail sale of refuse and garbage trucks and, as opposed to manufacturing trucks, RDK sells trucks to end users, such as individual haulers, waste management companies, and municipalities, who utilize the trucks in garbage and refuse collection. (Id. at ¶ 8; Oney Dep. at 6-7); Paneto v. Motor Car Concepts II, Inc., 2007 U.S. Dist. LEXIS 6915, *10, 12 (M.D. Fla. January 31, 2007) (holding that automobile dealership that did not manufacture automobiles or any other product was a "non-manufacturing establishment" for purposes of Section 213(b)(10)(A)). Indeed, Plaintiffs themselves testified that RDK is in the business of selling trucks. (Sutherland Dep. at 93; Williams Dep. at 32).

Further evidence that RDK is a retailer, not a manufacturer, is that it possesses a license under the laws of the State of Florida to operate as an independent motor vehicle dealership. (Kemner Decl. at ¶ 4). Not only is RDK a licensed motor vehicle dealership, it operates much like a car dealership, the primary difference being that rather than selling automobiles, RDK sells refuse and garbage trucks to its customers. (Id. at ¶ 9). In fact, like a car dealership, RDK has a tag and title office, which allows it to assist its in-state customers in obtaining vehicle titles. (Id.). All of these facts, in combination with the above, demonstrate beyond question that RDK is a non-manufacturing establishment.

Second, there also is no dispute that RDK is "primarily engaged in the business of selling [trucks] to ultimate purchasers." 29 U.S.C. § 213(b)(10)(A). The FLSA's interpretive regulations dictate that to be "primarily engaged," RDK must demonstrate that "over half of [RDK's] annual dollar volume of sales made or business done must come from sales of the enumerated vehicles." 29 C.F.R. § 779.372(d). RDK also satisfies this requirement as there is no dispute that over fifty percent of its annual volume is generated from refuse and garbage truck sales. (Kemner Decl. at ¶ 10). Moreover, as discussed above, RDK's customers are end users of RDK's trucks in the operation of their waste management businesses. (Id. at ¶¶ 8-9).

Finally, the fact that Plaintiffs worked in RDK's service shop does not affect the conclusion that they were employed by a non-manufacturing establishment. According to the regulations,

> . . . [t]he exemption is intended to apply to employment by such an establishment of the specified categories of employees even if they work in physically separate buildings or areas, or even if, though working in the principal building of the dealership, their work relates to the work of physically separate buildings or areas, so long as they are employed in a department which is functionally operated as part of the dealership.

29 C.F.R. § 779.372(b)(1)(ii). Although RDK's service shop is located in a building separate from the dealership's main offices, its service arm operates as an integrated part of RDK's truck dealership business. (Kemner Decl. at ¶ 7). Thus, pursuant to the regulations, Plaintiffs are employed by a "non-manufacturing establishment" for purposes of the mechanics' exemption.

9

### b. *Plaintiffs are mechanics primarily engaged in servicing refuse trucks.*

Following its determination that RDK is a "non-manufacturing establishment" covered by Section 213(b)(10)(A) of the FLSA, this Court must next decide whether Plaintiffs can be classified as "mechanics" under the exemption. The FLSA's interpretive regulations define "mechanic", as the term is used in Section 213(b)(10)(A), as follows:

> [A] mechanic is any employee primarily engaged in doing mechanical work (such as get ready mechanics, automotive, truck, farm implement, or aircraft mechanics, used car reconditioning mechanics, and wrecker mechanics) in the servicing of an automobile, trailer truck, farm implement, or aircraft for its use and operation as such. This includes mechanical work required for safe operation, as a vehicle, farm implement, or aircraft.

29 C.F.R. § 779.372(c)(3). Expressly excluded from the definition of "mechanic" are "employees primarily performing nonmechanical work as washing, cleaning, painting, polishing, tire changing, installing seat covers, dispatching, lubricating or other nonmechanical work." Id.

Beyond this definition, relevant case law illustrates the type of work performed by a "mechanic" for purposes of Section 213(b)(10)(A). In a recent case, for example, the Middle District of Florida concluded that the plaintiff, whose job duties included, in part, (1) making repairs or adjustments to used cars and trucks to place them in salable condition; (2) using hand tools, portable power tools, and specification sheets in connection with performing work on used cars and trucks; (3) installing optional equipment specified by the defendant's customers; (4) installing standard components; and (5) installing or repairing major mechanical, hydraulic, or electromechanical equipment, was a "mechanic" for purposes of the Section 213(b)(10)(A) exemption. See Paneto v. Motor Car Concepts II, Inc., 2007 U.S.

Dist. Lexis 6915, at *2-3, 9 (holding that plaintiff was not entitled to overtime compensation because he was a "mechanic" under Section 213(b)(10) of the FLSA).

The <u>Viart v. Bull Motors, Inc.</u>, 149 F. Supp. 2d 1346 (S.D. Fla. 2001) case also is instructive, particularly the Court's discussion of the regulation's definition of "mechanic." In concluding that the plaintiff was a "mechanic" (and thus that he was not entitled to overtime compensation), the <u>Viart</u> Court relied, in part, on the regulation's use of the title "get ready mechanic" in defining "mechanic." <u>Viart</u>, 149 F. Supp. 2d at 1349. According to the Department of Labor's definition, a "get ready mechanic" includes one who

> . . . makes minor repairs or adjustments to place vehicles in salable condition, using handtools, portable power tools, and specification sheets. . . . Installs <u>optional</u> <u>equipment</u> specified by customer or dealer . . . using handtools. Installs <u>standard</u> <u>component</u>s . . . using handtools. . . . May install or repair major mechanical, <u>hydraulic</u>, or electromechanical equipment . . . using mechanic's handtools.

<u>Id.</u> at 1350 (citing Department of Labor's Dictionary of Occupational Titles, § 806.361.026 (4th ed. 1991) (emphasis added). In other words, because the plaintiff's job duties, which included among other things, installing car accessories and using specialized tools, such as wrenches and electric and battery-powered tools, fell within the scope of the definition of "get ready mechanic", the <u>Viart</u> Court found he also was a mechanic for purposes of Section 213(b)(10)(A). <u>Id.</u> at 1351.

Against this legal backdrop, Plaintiffs are "mechanics" as that term has been defined by the FLSA's regulations and interpreted in cases such as <u>Paneto</u> and <u>Viart</u>. Just like the plaintiff in <u>Paneto</u>, Plaintiffs' job responsibilities as hoist installers required them to install standard components (hoists) to RDK's refuse trucks, as well as optional equipment pursuant to customer specifications, to place them in saleable condition. (Sutherland Dep. at 51, 67;

11

Williams Dep. at 32; Oney Dep. at 11; Oney Decl. at ¶ 3). Plaintiffs also admitted that, like the plaintiff in Paneto, these installations required them to use specialized handtools such as wrenches, drills, pliers, and other special tools, such as side drills. (Sutherland Dep. at 90-91; Williams Dep. at 28; Oney Dep. at 11; Oney Decl. at ¶¶ 7-8, 10). On the basis of these undisputed facts, Plaintiffs, like the plaintiff in Paneto, are properly defined as "mechanics", thus triggering the overtime exemption of Section 213(b)(10)(A) of the FLSA.

Likewise, the installation work performed by Plaintiffs places them squarely within the definition of "get ready mechanic" as discussed in Viart. Again, there is no dispute that as hoist installers, Plaintiffs were primarily responsible for installing standard components (hoists) and optional equipment, such as tarps, extra axles, fenders and specialty packages on trucks pursuant to RDK or its customer specifications. (Sutherland Dep. at 51, 67; Williams Dep. at 32; Oney Dep. at 19, 21; Oney Decl. at ¶¶ 3, 5, 9-10). Indeed, each hoist installation also required the installation of hydraulic cylinders, which functioned to raise the hoists. (Sutherland Dep. at 87-88; Williams Dep. at 52; Oney Decl. at ¶ 8). These are precisely the types of installations (standard components, optional equipment and hydraulic equipment) identified within the definition of "get ready mechanic." See Department of Labor's Dictionary of Occupational Titles, § 806.361.026 (4th ed. 1991) (defining "get ready mechanic" to include one who installs optional equipment specified by customer or dealer, standard components, or hydraulic equipment using mechanic's hand tools) (emphasis added). Thus, like in Viart, the very fact that Plaintiffs performed work well within the scope

of the definition of a "get-ready mechanic" automatically renders them "mechanics" as defined by the regulations.[7]

Finally, there is no dispute that Plaintiffs were "primarily engaged" in servicing RDK's refuse trucks. According to the regulations, "primarily engaged means the major part or over 50 percent of the mechanic's time must be spent in . . . servicing the enumerated vehicles." 29 C.F.R. § 779.372(d). Here, both Sutherland and Williams testified that they spent much more than 50 percent of their time installing hoists and other add-on equipment to RDK's trucks. (Sutherland Dep. at 90, 94, 150 (100 percent); Williams Dep. at 55, 61-62 (75 percent)). Because it is undisputed that Plaintiffs primarily engaged in performing mechanical work on RDK's refuse trucks, they are covered by the mechanics' exemption in Section 213(b)(10)(A) and not entitled to premium compensation for overtime hours worked.

**2.     The motor-carrier exemption does not apply.**

Any argument advanced by Plaintiffs that they are entitled to overtime compensation because RDK cannot establish that the exemption in 29 U.S.C. § 213(b)(1) applies is wholly misplaced. Like the mechanics' exemption, the exemption found in Section 213(b)(1), or the

---

[7] Indeed, the conclusion that Plaintiffs are "mechanics" is further bolstered by the testimony about the types of work they did not perform. Plaintiffs testified that as hoist installers they were not required to perform the type of non-mechanical work, such as washing or cleaning the inside of trucks, painting trucks, or changing truck oil, batteries or tires, that is expressly excluded from the regulation's definition of "mechanic." (Sutherland Dep. at 29, 95; Williams Dep. at 56; Oney Decl. at ¶ 11); 29 C.F.R. § 779.372(b)(3); compare Viart, 149 F. Supp. 2d at 1351 (holding that plaintiff was a "mechanic" for purposes of Section 213(b)(10)(A) and noting that plaintiff did "much more than simply buff, wash, and paint cars") with Brennan v. Bill Kirk's Volkswagen, 497 F.2d 892, 894 (4th Cir. 1974) (finding that plaintiff, whose job responsibilities included washing, cleaning, painting, and polishing used cars, but did not perform mechanical work or use specialized tools, was not a "mechanic" for purposes of Section 213(b)(10)(A)).

motor-carrier exemption, exempts certain employees from the FLSA's overtime requirements. See 29 U.S.C. § 213(b)(1); Morrison v. Quality Transport Services, Inc., 474 F. Supp. 2d 1303, 2007 U.S. Dist. Lexis 12052 (S.D. Fla. January 29, 2007) (discussing the FLSA's motor-carrier exemption). Specifically, the motor-carrier exemption applies to those employees who fall within the jurisdiction of the Secretary of Transportation because they are (1) employed by a motor carrier involved in the transportation of interstate goods; and (2) engaged in activities that directly affect the safe operation of motor vehicles in interstate or foreign commerce. See 29 U.S.C. § 213(b)(1); 29 C.F.R. §§ 782.2(a), (b)(2); Morrison, 2007 U.S. Dist. Lexis 12052, *7-8. Mechanics can fall within the scope of the motor-carrier exemption depending on the character of work they perform. See 29 C.F.R. § 782.6(a).

Here, RDK is relying upon the mechanics' exemption found in 29 U.S.C. § 213(b)(10)(A), not the motor-carrier exemption found in 29 U.S.C. § 213(b)(1). Thus, the Court should not spend its time entertaining any arguments relating to the motor-carrier exemption because it simply is not at issue in this case. As discussed above, because RDK has demonstrated that the mechanics' exemption found in Section 213(b)(10)(A) applies to the undisputed facts, Plaintiffs' claim for overtime compensation under the FLSA fails as a matter of law.

### IV. CONCLUSION

Based on all of the foregoing, RDK has established that the exemption found in Section 213(b)(10)(A) of the FLSA applies to Plaintiffs and expressly exempts them from the FLSA's overtime requirements. For this reason, Plaintiffs' single claim against RDK for the recovery of unpaid overtime compensation fails as a matter law. Accordingly, RDK is

entitled to summary judgment and moves this Court to enter an Order granting the instant Motion and dismissing with prejudice Plaintiffs' Amended Complaint in its entirety.[8]

Respectfully submitted this 30th day of April, 2007.

                                              DUANE MORRIS LLP

                                              /s Eric P. Berezin
                                              Eric P. Berezin
                                              Florida Bar No. 434299
                                              James P. Ferguson, Jr.
                                              Georgia Bar No. 258743 (admitted *pro hac vice*)

1180 West Peachtree Street
Suite 700
Atlanta, GA 30309
(404) 253-6900 (telephone)
(404) 253-6901 (facsimile)
Email: epberezin@duanemorris.com

Attorneys for Defendant
RDK Truck Sales & Service, Inc.

---

[8] A proposed Order is being submitted simultaneously with the instant Motion.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOHNNIE SUTHERLAND, on his own behalf
and others similarly situated,

    Plaintiff,

v.                                      Case No: 8:06-cv-954-T-17TGW

RDK TRUCK SALES & SERVICE, INC.,
a Florida Corporation,

    Defendant.
_____/

## CERTIFICATE OF SERVICE

    I hereby certify that on April 30, 2007, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send notice of electronic filing to the following:

    Carlos Leach, Esq.
    Morgan & Morgan, P.A.
    20 North Orange Avenue
    16th Floor
    P.O. Box 4979
    Orlando, FL 32802-4979

                                        /s Eric P. Berezin
                                        Eric P. Berezin

                                        Counsel for Defendant
                                        RDK Truck Sales & Service, Inc.