UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


JOHNNIE SUTHERLAND, ON HIS
OWN BEHALF AND ON BEHALF
OF OTHERS SIMILARLY
SITUATED,                                                  CASE NO.: 8:06-CIV-954-T-17-TGW

                    Plaintiffs,

vs.

RDK TRUCK SALES & SERVICE,
INC., A FLORIDA CORPORATION,

                    Defendant.
_____/


**PLAINTIFF'S RESPONSE MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, JOHNNIE SUTHERLAND and Opt-in Plaintiff, ROYTANNER

WILLIAMS, ("Plaintiffs") respond to Defendant's Motion for Summary Judgment

Motion as follows:

I.    **SUMMARY OF PLAINTIFF'S RESPONSE**

Defendant's Motion must be denied for two reasons. First, there are still important

factual disputes in this case. Specifically, the Defendant claims that both Plaintiffs are

mechanics is factually incorrect, especially with regard to Plaintiff Williams. Therefore

the Defendant requests that this Court render summary judgment by impermissibly

making a credibility determination as to who is telling the truth - Plaintiff or Defendant.

Second, even if the Court finds that the Plaintiffs were both mechanics, neither of them fall within the exemption under 29 U.S.C. 213 (b)(10). Defendants place great emphasis on the Plaintiffs' job titles and would rather have this Court ignore the characteristics of their job duties by citing only favorable sections of deposition testimony and handcrafted declarations. When analyzing the case as a whole, the Court will find that the factual disputes still remain and the exemption claimed by the Defendants does not apply to the Plaintiffs. However, the fact that Defendant outright denies Plaintiff's claims is the very essence of a material fact in dispute. Plaintiff has demanded a trial by jury on all issues so triable. Because one of the ultimate determinations of who prevails in this matter necessarily boils down to whose version of the facts (not the law) is to be believed, the jury, not this Court must render that determination. In short, there clearly exists a genuine issue of material fact in dispute precluding summary judgment in this matter. For this reason alone, Defendant's Motion must be denied as a matter of law.


## II.     MEMORANDUM OF LAW

### A.     Summary Judgment Standard

It is well settled that a party seeking summary judgment bears the initial burden to demonstrate to the district court the basis for its motion for summary judgment and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions which it believes show an absence of any genuine issue of material fact. *See Hairston v. Gainseville Sun Pub. Co.,* 9 F.3d 913, 918 (11th Cir. 1993) *reh'g and reh'g en banc denied,*

16 F. 3d 1233 (11th Cir. 1994). In assessing whether the movant has met this burden, the district court must review the evidence and all factual inferences drawn therefrom, in the light most favorable to the non-moving party. *See id.* If the movant successfully discharges its burden, the burden then shifts to the non-movant to establish, by going beyond the pleadings, that there exist genuine issues of material fact. *See id*

**B.      Defendant's Motion Must Be Denied Because This Court Cannot
Render a Credibility Determination at the Summary Judgment Stage.**

It is axiomatic that it is not part of the court's function, when deciding a motion for summary judgment, to decide issues of material fact, but rather determine whether such issues exist to be tried. *Anderson v. Liberty Lobby,* 477 U.S. 242, 249 (1986)  The Court must avoid weighing conflicting evidence or making credibility determinations. *See id.* at 248.    Instead, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* Where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a general issue of material fact, then the court should refuse to grant summary judgment." *Barfield v. Brierton,* 833 F.2d 923, 933-34 (11th Cir. 1989); *see also Hairston,* 9 F.3d 913, 918-19; *Mulhall v. Advance Sec. Inc.,* 19 F.3d 586, 589-90 (11th Cir.1994); *Hickson Corp. v. N. Crossarm Co., Inc.,* 357 F.3d 1256, 1260 (11th Cir.2004).    In addition, where material issues of fact existed as to whether the employee was exempt from the FLSA's overtime provisions, summary judgment is precluded. *Evans v. McClain of Ga., Inc.,* 131 F.3d 957, 965-66 (11th Cir.1997).

Here, both Plaintiffs worked for the Defendant in the hoist installation departments. There is no dispute that Plaintiff Sutherland was a hoist installer. *See* Tran.

Depo. of Russell Oney, (Mr. Sutherland's supervisor) excerpts as composite Exhibit "A" at 6:3; 11:18 (February 28, 2007), However, there is a huge dispute as to whether Plaintiff Williams was a hoist installer. Plaintiff Williams was hired as a maintenance worker in the hoist department responsible for cleaning up the shop daily. *Id.* at 27:13. According to his supervisor, he was responsible for sweeping, maintaining the stock area, placing stock parts in numerical order. *Id.* at 29:6-22. He never held any other title other than maintenance worker and never worked as a hoist installer. *Id.* 31: 7-11.

Sherry Lasanta, the Defendant's accounting representative testified that Plaintiff Williams was a "shop helper" and was paid at a rate of $7.50 per hour. *See* Tran. Depo. of Sherry Lasanta excerpts as composite Exhibit "B" at 22:5; 23:4-7. Hoist installers, like Johnnie Sutherland, earned a higher hourly wage and were eligible for bonuses based on the number of completed hoist installations. *Id.* at 11:10:13:5.

Plaintiff Williams' testimony was that he was hired as a helper. Tran. Depo. Roytanner Williams at excerpts as composite Exhibit "C" 19:22 January 18, 2007. He was being taught how to weld and perform hoists jobs since he had no prior experience. *Id.* at 12:9-11; 13:10-12. However, he only worked there for under six weeks. Trans. Depo Lasanta at 21:23. Plaintiff Williams would assist hoist installers like Plaintiff Sutherland at times by holding parts so that they could weld. Plaintiff Williams would also pick up screws and bolts and sweep or clean up the bathrooms. Tran. Depo. Williams at 23:5-25. In addition, he was responsible for going to the parts department to retrieve parts. *Id.* at 59:25; 60:1-20. Although Plaintiff Williams testified that seventy-

five percent of his time involved installation work, this clearly was not the case according to everyone else. *Id.* at 61:22.

Plaintiff Sutherland recalled working with Plaintiff Williams. He clarified that Plaintiff Williams was not a hoist installer. Tran. Depo. of Johnnie Sutherland excerpts as composite Exhibit "D" at 100:21-25; 101:12. He added that Plaintiff Williams would merely help other hoist installer out when help was needed. *Id.* at 101:21.

Based on the accounts of all employees that knew Plaintiff Williams, the facts show that he was merely a helper and not a hoist installer. At the very least, there is a factual dispute concerning the same which must be resolved by a jury. Factual disputes surrounding whether an employee was exempt should be resolved by a jury. *Mitchell v. City Ice Co.*, 273 F.2d 560, 562 (5th Cir.1960).

## C.    Defendant's Argument That Section 213(b)(10) Applies Must Fail

The Defendant argues that the Plaintiffs are exempt under section 213(b)(10). Specifically, the Defendant claims that both plaintiffs are exempt from overtime since they will be classified as a "mechanicals." The Plaintiffs disagree and argue that the Defendant seeks a very broad, improper definition of the term.

### 1.    The Defendant is not a non-manufacturing establishment.

This section provides that mechanics "primarily engaged in ... servicing automobiles" employed by "a nonmanufacturing establishment primarily engaged in the business of selling such vehicles [ ] to ultimate purchasers" are exempt from the overtime requirements of the FLSA. *Viart v. Bull Motors, Inc.*, 149 F.Supp.2d 1346 (S.D.Fla. 2001). This exemption, like other FLSA exemptions, is to be narrowly construed. Id.

The Defendant *is* a manufacturer. They were manufacturing trucks from scratch. The Defendant manufactures a garbage/refuse truck from simply a truck cab and chassis and adds every other part. *See* Russell Oney Trans. Depo. at 15:10-25;1-4. Mr. Oney further testified that the Defendant has a separate shop for its "mechanics" where they actually refurbish used trucks and motors. *Id* at 31:10. This facility was completely different from his and both Plaintiffs' facility.

2.      **Plaintiffs do no fall within the meaning of section 213(b)(10).**

As used in section 13(b)(10), a mechanic is any employee primarily engaged in doing mechanical work (such as get ready mechanics, automotive, truck, farm implement, or aircraft mechanics, used car reconditioning mechanics, and wrecker mechanics) in the *servicing* of an automobile, trailer, truck, farm implement, or aircraft for its use and operation as such. The Plaintiffs in this case were not mechanics that were servicing any vehicles.

Service is defined as: "to make fit for use; repair; restore to condition for service: to service an automobile." Webster's Random House College Dictionary, definition #32. Plaintiff's job duties can be more accurately described as part of the manufacturing process. In fact, the U.S. Department of Labor, Bureau of Labor Statistics cites assemblers, fabricators, metal workers, and welders as part of the motor vehicle manufacturing process. *See* Bureau of Labor and Statistics website (ww.bls.gov-Career Guide to Industries). Plaintiff Sutherland spent at least fifty (50) percent of his day welding. Trans. Depo. of Johnnie Sutherland at 90:5. If we accept Defendant's

argument, then every production worker who ever worked on a car at GM or Chrysler would be exempt.

The Defendant argues that the *Viart* case's analysis of the definition of "get ready mechanic" is instructive to the case at hand. The Plaintiff agrees. The Dictionary defines a "get-ready mechanic" as:

> one who [i]nspects and services new automobiles on delivery to dealer or customer, and makes minor repairs or adjustments to place vehicle in salable condition, using handtools, portable power tools, and specification sheets: [sic] Inspects vehicle for obvious damage and missing major components. Records discrepancies and signs acceptance slip for each vehicle delivered. Inspects vehicle for loose or misaligned items, such as trim, doors, and hardware, and positions defective items according to specifications, using handtools. Starts engine and drives automobile to test steering, brakes, transmission, and engine operation. Activates power equipment, such as electric windows, seats, radio, horn, lights, and directional signals to ensure specified operating standards. Washes car and vacuums interior. Inspects surfaces to detect minor chips and scratches in paint and touches up imperfections, using brush applicator and factory-supplied matching paint. Installs optional equipment specified by customer or dealer, such as outside mirrors, rugs, and seat covers, using handtools. Installs standard components, such as hubcaps and wiper blades, using handtools. Pours antifreeze into radiator according to seasonal requirements. Polishes car to remove preservative coating and road film accumulated during transit. May spray undercoating material on vehicle, using spray gun. May tune engine, using mechanic's tools and test equipment. May install or repair major mechanical, hydraulic, or electromechanical equipment, such as radios, air-conditioners, power steering units, and power brakes, using mechanic's handtools.

U.S. Dep't of Labor, Dictionary of Occupational Titles § 806.361.026 (4th ed.1991).

First of all, section 779.372 of the Code of Federal Regulations only refers to "non-manufacturing" establishments. 29 C.F.R. § 779.372. The Defendant focuses its argument on whether it is "primarily engaged in the business of selling vehicles to

ultimate purchasers," under this section as it applies to non-manufacturers. The Plaintiffs

argue that this should not matter since the Defendant is definitely manufacturing vehicles,

whether it sells them or not. Therefore, the definition of a "get ready mechanic, in this

use, only applies to employees of a non-manufacturing establishment. By its title alone,

section 779.372 acknowledges that there is a difference in manufacturing and non-

manufacturing establishments. Clearly, the D.O.T.'s definition of a get-ready mechanic

applies to the latter.

If the Court finds that the Plaintiffs were a part of a non-manufacturing

establishment, the Plaintiff argues that exemption still should not apply based on the

legislative intent of the statute. In reviewing the mechanics' exemption, the *Viart* Court

pointed to the legislative history of the exemption. *Id.* at 1351. The legislative history

indicates that the exemption was intended to apply to employees of automobile dealers

who traditionally worked on a commission basis. See 112 CONG. REC. 11289 (daily ed.

May 24, 1966). As the Former Fifth Circuit explained, in finding that an automobile

dealer's service salesmen were within the scope of the exemption, service salesmen are

functionally similar to the mechanics and partsmen who service the automobiles. All

three work as an integrated unit, performing the services necessary for the maintenance of

the customer's automobile. The mechanic and partsmen provide a specialized service

with the service salesman coordinating these specialties. Each of these service employees

receive a substantial part of their remuneration from commissions and therefore are more

concerned with their total work product than with the hours performed.

Neither Plaintiff in this case received a commission. Both Plaintiffs were paid on an hourly basis. Plaintiff Sutherland received a bonus of $50 for each completed installation, but no commission on the overall sale of the truck. Trans. Depo of Lasanta at 13:5. Therefore, his extra pay was in no way tied to the sell of the truck. In addition, Plaintiff Williams only received an hourly pay because he was only a maintenance guy.

The Defendant argues that the *Paneto* case is also instructive for purposes of determining whether the current Plaintiffs are mechanics for purposes of 213(b)(10(A). *Paneto v. Motor Car Concepts II, Inc.*, Slip Copy, 2007 WL 328730, (M.D.Fla. 2007). However, the *Paneto* case can be distinguished for two reasons. First, in *Paneto*, whether the Defendant was a "non-manufacturer" was not an issue. In fact, the Court pointed out that the Plaintiff did not even address this issue. *Id.* In the case at hand, the Plaintiff argues that the Defendant is not a non-manufacturer. Second, the Plaintiff in *Paneto* acknowledged that he was a "mechanic" in pleadings. That is not the case here. The Plaintiffs have merely considered themselves a hoist installer and a maintenance helper respectively.

## III.   CONCLUSION

There are several important factual issues in dispute that prevent summary judgment at this stage and require a jury determination. Whether Roytanner Williams was a maintenance guy or a hoist installer is a huge factual dispute. In fact, more witnesses state that he was a maintenance guy than a hoist installer. There is also a factual dispute as to whether the Plaintiffs' actual job duties qualify them under the definition of a mechanic.

Accordingly, Plaintiff respectfully requests that this Court deny Defendant's Motion in its entirety. *See Blackshear v. Rose*, 2006 WL 298769 *2 (M.D. Fla. 2006) ("Since there remain genuine issues of material fact with respect to Plaintiff's claims (as evidenced by the conflicting versions of the facts as set forth by Plaintiff and the Defendants.

Also, the exemption under section 213(b)(10) does not apply because: (1)the Defendant was non a "non-manufacturer", (2) the Plaintiffs were not mechanics performing any type of service work but instead manufactured a garbage truck from simply a chassis and a cab, and (3) the legislative intent shows that this exemption was never intended to be this broad as to apply to the current Plaintiffs. Since exemptions under the FLSA should be narrowly construed, the Plaintiff argues that the Defendant's Motion for Summary Judgment be denied.

DATED this 16th day of May 2007.

**/s/ CARLOS LEACH**

Carlos Leach, Esquire
FBN 0540021
Morgan & Morgan, P.A.
20 N. Orange Ave., 16th Floor
P.O. Box 4979
Orlando, FL 32802-4979
Telephone:    (407) 420-1414
Facsimile:    (407) 425-8171
Email: cleach@forthepeople.com
Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the above and foregoing, has been served Jay Ferguson, Esquire, DUANE MORRIS, LLP, 1180 West Peachtree St., Suite 700, Atlanta, GA 30309-3448, E-mail: jpferguson@duanemorris.com, Attorneys for Defendant, using the CM/ECF system which I understand will send a notice of electronic filing, on this 16th day of May, 2007.

/s/ **CARLOS LEACH**
Carlos Leach, Esquire